IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAMIAN SCHWARTZMAN, in his capacity as Receiver for Robert Stinson, Jr.; Life's Good, Inc.; Life's Good S.T.A.B.L. Mortgage Fund, LLC; Life's Good High Yield Mortgage Fund, LLC; Life's Good Capital Growth Fund, LLC; IA Capital Fund, LLC; Keystone State Capital Corporation; First Commonwealth Service Company; Susan L. Stinson; Christine A. Stinson; Michael G. Stinson; and Laura Marable,  Plaintiff,  v.  JANET L. HUTCHISON, also known as LEELA HUTCHISON,  Defendant. | CIVIL ACTION   No. 11-1349 |

## MEMORANDUM

**Schiller, J.**                                                                                                                               **September 26, 2011**

      Kamian Schwartzman, in his capacity as Receiver for the receivership estate established by the Court in *SEC v. Stinson*, Civ. A. No. 10-3130, brings this action to recover stolen funds received by Janet Hutchison, also known as Leela Hutchison. Currently before the Court is the Receiver's motion for summary judgment on his fraudulent transfer, unjust enrichment, and equitable accounting claims. For the following reasons, the motion is granted as to the fraudulent transfer claim and denied as moot as to the unjust enrichment and equitable accounting claims.

**I.     BACKGROUND**

      The Receiver filed this action on February 25, 2011, alleging that Hutchison received stolen funds that originated from a fraudulent scheme perpetrated by Robert Stinson, Jr. The Court

addressed the mechanics of the Stinson Ponzi scheme in a related case, *SEC v. Stinson*, Civ. A. No. 10-3130, 2011 WL 2462038, at *3-5 (E.D. Pa. June 20, 2011). In brief, Stinson and the "Life's Good Funds" he controlled obtained over $17 million from at least 262 investors. *Id.* at *1. Following an SEC investigation and civil enforcement action, the Court appointed the Receiver to recover investor funds lost in the Stinson scheme. *See id.* at *2.

The Receiver has traced a total of $81,586.73 in cash and goods obtained through the Stinson Ponzi scheme and received by Hutchison. (Pl.'s Statement of Undisputed Facts ["Pl.'s SOF"] ¶¶ 18-23.) Specifically, Hutchison received $77,000 in wire transfers from the Life's Good STABL Mortgage Fund, LLC (the "STABL Fund") and a laptop computer and projector worth $4,586.73 from Life's Good, Inc. (Pl.'s Mot. for Summ. J. Ex. B [Reqs. for Admis.]; *id.* Ex. C [Resps. to Reqs. for Admis.]; *id.* Ex. D [9/12/09 Email]; *id.* Ex. E [10/25/09 Email]; *id.* Ex. F [Life's Good, Inc. Bank Statement].) Hutchison does not dispute that she received these funds and goods. (Def.'s Statement of Disputed Facts ¶¶ 18-23.)

Hutchison describes herself as "a teacher, lecturer, writer and researcher" with "experience in the Selenite caves in Mexico." (Def.'s Resp. to Mot. for Summ. J. Ex. B [Decl. of Leela Hutchison] ¶ 4.) She first met Stinson at a conference in June 2009, where she learned about Stinson's online television venture, the Eclipse Channel. (*Id.* ¶¶ 2-3.) Hutchison claims she received a call from Stinson the following July inviting her to become a teacher/presenter and create content for the Eclipse Channel. (*Id.* ¶ 5.) According to Hutchison, Stinson agreed to pay for her time and expenses while she worked on the content, and she quit her job to devote herself to the project full time. (*Id.* ¶¶ 5, 9.) A report entitled "Monthly Progress of Project Selenite for Eclipse Channel" describes the tasks she completed from August 2009 to May 2010. (*Id.* ¶ 10; Def.'s Resp. to Mot.

2

for Summ. J. Ex. B [Attach. to Hutchison Decl.].) The Eclipse Channel was never launched and is now under the control of the Receiver.

The Receiver has produced considerable documentary evidence that calls into question Hutchison's version of these events. A number of emails, the authenticity of which Hutchison does not challenge, suggest that the transfers from the STABL Fund were gifts or donations, not payments for services provided. On August 15, 2009, Stinson wrote to Hutchison, "I've been thinking about you a lot lately and I just wanted to tell you how grateful I am for you to allow me to be used like I am." (Pl.'s Mot. for Summ. J. Ex. G [8/15/09 Email].) Hutchison wrote back, "I think there is going to be a lot of time to tell you why you have been guided to assist me and even in saying that I do not know the whole story." (*Id.* Ex. H [8/17/09 Email].)

In a November 20, 2009 email, Hutchison told Stinson she was "going to need [his] help" in building a website, commissioning art for the website, and creating an "aroma therapy hydrosol." (*Id.* Ex. I [11/20/09 Email].) The following week, Hutchison wrote, "Thank you again for making my day blessed in so many ways." (*Id.* Ex. J [11/25/09 Email].) From December 1, 2009 through March 2, 2009, a website developer who was paid by Life's Good, Inc. helped Hutchison to create a website. (Pl.'s SOF ¶ 34; Pl.'s Mot. for Summ. J. Ex. K [Excerpt from Life's Good, Inc. Corporate Directory]; *id.* Ex. L [12/1/09 to 3/2/10 Emails].) The website includes biographical information about Hutchison, describes her research into Selenite crystals, provides a listing of her public appearances, and sells her hydrosol product. (*See* www.thecrystalgiants.com (last visited Sept. 26, 2011).) It makes no mention of the STABL Fund, Life's Good, Inc., or the Eclipse Channel, and Hutchison has not presented evidence that her website benefitted any of those entities. (*Id.*)

On January 23, 2010, Stinson emailed Hutchison and advised her to "[l]ook for my

3

contribution on the first of February." (Pl.'s Mot. for Summ. J. Ex. M [1/23/10 Email].) Four days later, Stinson wrote, "Check your account today, I need to make the deposit early, because I'll be out of town this weekend myself. Sure wish I were there with you instead. I could use a very big hug from your beautiful body and a kiss from your sparkling lips right now." (*Id.* Ex. N [1/27/10 Email].) The next month, Hutchison sent Stinson an email that said, "I received your wired funds into my account and I will never stop being completely blown away and completely grateful for your assistance in allowing me to 'do my job' . . . whatever that is!" (*Id.* Ex. P [2/26/10 Email].) Stinson responded, "As for the gift to you, well I'm thankful, as always, that I am allowed to participate in your walk and calling during this incarnation. I've been so very blessed to have the means to say yes to the Universe, when it asked me to assist you and answer the desires of your heart." (*Id.* Ex. Q [2/28/10 Email].) On March 19, 2010, Hutchison wrote to thank Stinson for the "incredible opportunity" he had given her to "devote 100 percent of [her] attention to 'service to others' by being a messenger of the healing properties of selenite." (*Id.* Ex. R [3/19/10 Email].)

II.     **STANDARD OF REVIEW**

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party bears the burden of persuasion at trial, it must identify evidence in the record establishing the absence of a genuine factual issue. *Nat'l State Bank v. Fed. Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to

carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III.   DISCUSSION

The Receiver brings his fraudulent transfer claim under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"). The statute defines a "transfer" as "[e]very mode . . . of disposing of or parting with an asset or an interest in an asset. The term includes payment of money, release, lease, and creation of a lien or other encumbrance." 12 Pa. Cons. Stat. § 5101(b). A transfer is "fraudulent" as to present or future creditors if the debtor made the transfer: (1) "with actual intent to hinder, delay or defraud any creditor of the debtor"; or (2) "without receiving a reasonably equivalent value in exchange for the transfer or obligation." 12 Pa. Cons. Stat. § 5104(a). "The first provision [of § 5104(a)] provides for liability under an 'actual intent' theory of fraud, while the second is a 'constructive fraud' provision." *In re Blatstein*, 192 F.3d 88, 96 (3d Cir. 1999). Once a creditor has established fraudulent intent, it may avoid the transfer, attach the transferred asset or other property of the transferee, obtain an injunction against future transfers, or seek appointment of a receiver.

5

12 Pa. Cons. Stat. § 5107.

"[T]he mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud." *Hecht v. Malvern Preparatory Sch.*, 716 F. Supp. 2d 395, 400-01 (E.D. Pa. 2010) (quoting *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008)); *see also Janvey v. Alguire,* 647 F.3d 585, 598 (5th Cir. 2011); *SEC v. Forte*, Civ. A. Nos. 09-63, 09-64, 2010 WL 939042, at *5 (E.D. Pa. Mar. 17, 2010). Relief may still be denied, however, if the transferee can establish as an affirmative defense that she "took in good faith and for a reasonably equivalent value." 12 Pa. Cons. Stat. § 5108(a); *see also* § 5108 Committee Comment No. 1 ("The person who invokes this defense carries the burden of establishing good faith and the reasonable equivalence of the consideration exchanged."). An affirmative defense is generally waived if the defendant does not include it in a responsive pleading. *See* Fed. R. Civ. P. 8(c); Fed. R. Civ. P. 12(b); *Chainey v. Street*, 523 F.3d 200, 209 (3d Cir. 2008).

Because the existence of the Stinson Ponzi scheme is not in question, the Receiver has established actual intent to defraud. Hutchison contends that the "good faith" defense applies to her conduct, but this argument fails for several reasons. As an initial matter, because Hutchison did not raise any affirmative defenses in her Answer, she has waived the "good faith" defense. Hutchison mistakenly argues that Federal Rules of Civil Procedure 8(c) and 12(b) "are inapposite as neither of these rules mandate the affirmative pleading of a defense under" PUFTA. (Def.'s Resp. to Mot. for Summ. J. at 4.) Rule 8(c) provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including" a non-exhaustive list of eighteen affirmative defenses. *See Jones v. Bock*, 549 U.S. 199, 212 (2007). That the list does not include the particular affirmative defense at issue here is irrelevant.

Even if the Court overlooked this deficiency of pleading, however, it would not affect the

outcome of this motion because Hutchison has not met her burden with respect to either element of her affirmative defense. First, she has not pointed to any evidence in the record that shows that she received the transfers in good faith. In this context, "good faith" means that the transferee "acted without actual fraudulent intent" and "did not collude with the debtor or otherwise actively participate in the fraudulent scheme of the debtor." 12 Pa. Cons. Stat. § 5108 Committee Comment No. 6. Hutchison identifies no facts that would support this element of her defense. While she notes that the Receiver "makes no assertion that [she] was a knowing participant, or was complicit, in Stinson's Ponzi scheme," this alone is insufficient to meet her burden. (Pl.'s Resp. to Mot. for Summ. J. at 1.)

Second, Hutchison has not demonstrated that she provided reasonably equivalent value to the transferors—the STABL Fund and Life's Good, Inc.—in exchange for the funds and goods she received. "[T]ransfers made solely for the benefit of a third party do not furnish reasonably equivalent value." *In re Burry*, 309 B.R. 130, 138 (Bankr. E.D. Pa. 2004). Both the Eclipse Channel Online Network, Inc. and Eclipsechannel.tv Global Broadcasting Network, Inc. are corporate entities separate and distinct from the STABL Fund and Life's Good, Inc. (Pl.'s Mot. for Summ. J. Ex. S [Corporate Search Records].) Hutchison argues that the benefits she provided to the Eclipse Channel flowed to Life's Good, Inc. because Stinson held out the Eclipse Channel as a subsidiary of Life's Good, Inc. (Def.'s Resp. to Mot. for Summ. J. at 5.) While it is true that "a transfer on behalf of a third party may produce a benefit that ultimately flows to the debtor, albeit indirectly," Hutchison has put forth no evidence that Life's Good, Inc.—much less the STABL Fund—actually received any benefit from her or the Eclipse Channel. *In re Burry*, 309 B.R. at 138. Thus, Hutchison has failed to meet her burden on this element of her defense as well.

Because Hutchison has waived the affirmative defense she now asserts and, regardless, cannot meet either of its elements, the Court will grant summary judgment on the Receiver's fraudulent transfer claim.

## IV. CONCLUSION

The Court finds that no genuine factual issue exists as to the Receiver's fraudulent transfer claim, and will therefore grant his motion for summary judgment on that claim. It is not necessary for the Court to reach the Receiver's unjust enrichment and equitable accounting claims because he is entitled to the relief he seeks based on the fraudulent transfer claim alone. An Order consistent with this Memorandum will be docketed separately.